This is our last case of the day, 4-14-0740. In re Marriage of Crystal Carter and Alan Carter. Senator Pete is here on behalf of the appellant. Senator Mayo is here on behalf of the accolade. There are only two of us sitting here because Justice Appleton is ill today. He'll be listening to the audio of the oral arguments later. Mr. Pete, you may proceed. Good afternoon, Judge. May I please the court and counsel Matthew Pete from Irwin. I take this call on behalf of Mr. Alan Carter, the appellant. We are here today for a review of Judge O'Brien's denial of Mr. Carter's motion to dismiss on the issue of race judicata, on the basis of race judicata, Crystal Carter's second amended petition to remove minor children from Illinois. What's your best case for saying that somebody can't file a successive petition? The best case for saying that someone can't file a successive petition would be Rogers v. St. Mary's, 1992, with the same evidence test, where the evidence in the second suit would have supported the first suit, but then the second suit is barred. The evidence is different. In this case, I wouldn't argue about the significance of the difference, but we do have different facts, don't we? The facts between her first petition to remove the minor children, which was tried at hearing in front of Judge Ryder in September of 2012, and the facts which she pleaded in her amended petition to remove the minor children, and then again in her second amended petition to remove the minor children, the ultimate facts that she pleaded towards the ultimate object did not change. There was some limited changes in that one. She did get married. She married the gentleman who was her paramour when she had filed her first petition, and as far as that was concerned, Judge, that was an issue. She had this paramour that she wanted to relocate to Indiana, but she did brought up what was decided by Judge Ryder. The other facts which changed were the children's situation, and we feel that that is significant. It is significant in the fact, though, that she's the one, Crystal Carter is the one who put the children in their situation. She doesn't plead that they're going to be in an improved situation in Indiana. The facts that she pleads regarding where she wanted them to end up in Indiana are the same. She pled the schools. She pled the area. She pled the extracurricular activities available to the children. She pled the house. She pled her job, teaching, everything where they would end up in Indiana. The pleadings were the same with respect to all those facts. All those issues were decided by Judge Ryder in September of 2012, and Judge Ryder even went so far as to say that there is nothing in Indiana that's better than what we have here in Illinois. Additionally, Judge, if we move forward in time with Crystal's amended petition to remove the minor children that she filed in September of 2013, she pleaded an extensive list of facts, essentially the same facts that she had pleaded with the difference of the children's situation, and then she turns around and she confessed Alan Carter's motion to dismiss her amended petition for leave to remove the minor children. She acknowledged and admitted the sufficiency of Alan's motion to dismiss on the basis of race due to Carter. Then only six weeks later, she files the second amended petition for leave to remove the minor children, which is essentially the fourth petition to remove the minor children that she filed in a matter of some 16 months. Was your client correct in his child support? I do not believe that he was, Judge. Would that be a changed circumstance? I would have to look at the judge to see if he was correct when she filed her first petition. Granted, the first petition followed only six weeks after the entry of the second part of the bifurcated dissolution of marriage, but I'm not aware that a party's financial status with respect to child support has anything to do with whether or not the children are better off in one state versus another. If she's got to offer permanent employment in Indiana, then substitute teaching in Illinois, she has the wherewithal plus the possibility of a second income to assist her in that she's now married rather than simply saying, we hope to get married, or I think we might get married, or he's my boyfriend. I understand your point, Judge. Looking at this from a slightly different perspective, though, at the end of the dissolution proceeding and prior to her filing her first petition for leave to remove, she did have full-time employment in the state of Illinois, and she intentionally left that. She stated at trial that she did not, in fact, make a tremendously exhaustive search for employment within Illinois outside of the Robinson, Illinois area. She could have taken her children anywhere within the state of Illinois. She worked in a limited fashion around Robinson. She didn't make it clear that she had even looked to try to get employment again back in the Charleston, Mattoon area. She essentially focused her search almost exclusively in Indiana, where she wanted to ultimately be. Allen's viewpoint is that she games the system. Initially, she moved the children first. She quit her job, moved to Indiana, then filed her petition post hoc. She was ordered to return to Illinois by Judge Reiter after a full hearing on the same set of facts. She did, and she put her children into her parents' house then in Robinson. And while she found limited employment for a certain amount of time, she continued her search for employment back in Indiana. In fact, she got a position back in Indiana. She stayed most of the time in Indiana. Our position, Judge, is that to affirm Judge O'Brien's denial of the motion to dismiss is essentially to reward her bad behavior. There is nothing that says you can't file successive petitions to remove. And the standard is the same as what is in the best interest of the children. The same standards you use for custody. We're a little bit in new ground in that we couldn't find a single case regarding race judicata and removal. That's really what I meant to ask at the beginning. You gave me the right answer in terms of the operative facts and so forth. But I should have said in this context. So the context that we're working from then is how race judicata applies to the best interest standard. Since the best interest standard is the same standard for custody as it is for removal, it makes sense to us to apply that. The epilee in her brief brings up In re Weaver, fourth district case from 1992 out of Piatt County. It quotes heavily from Nye versus Nye, where in the best interest in the custody context, race judicata applies to the same facts that existed at the time the petition was filed. But it also incorporates the same evidence test. Further on, it precludes an action when a judgment on the same claim was previously rendered against the same parties in an earlier proceeding. It's the same claim.  It's the same parties. So while it's covered by the best interest and the best interest of the children certainly change over time, to uphold Judge O'Brien's denial of Allen's motion to dismiss is to, again, as I said before, to reward Crystal Carter for making the children's situation worse. In fact, if we continue on with the thought process on what would be in the best interest of the children, stability is in the best interest of the children. We're looking at what is going to be a stable environment. In order to create that stability, we think it's essential to not be coming back to court time after time after time constantly seeking a different outcome than what you previously had. Stability is to not allow someone to change the children's circumstances for the worse only so that they can get their way further down the road. Thus, that's the overriding consideration here. The race judicata certainly applies to the best interest of the children in this way. We also have the practical consideration. We understand it's not a long distance. It's three or four hours between the Mattoon-Charleston area to where the children ultimately end up in Indiana. However, the Illinois legislature, when they wrote Section 609, passed Section 609, they didn't apply a radius. They didn't apply some circumference with which you could travel within. They said that prior to removing a child or children from Illinois, the General Assembly set that standard. While it may be practical to say that you could move from one side of the state to the other without having to concern yourself with 609, in this case, that's not what's happened. She's gone across the state line, and that's where the General Assembly set the limit. At this point... What did the guardian ad litem say? The guardian ad litem said in his report, and considering his report also, Judge, I think it's noteworthy to consider that in her second amended petition to remove the minor children, Crystal did not ask for that report to be incorporated by reference. She only said that the report exists. The guardian ad litem said that the matter should go to hearing just so that the issue could be decided. He focused on the best interest of the children is the overriding consideration, and that the best interest of the children is a dynamic situation that's constantly changing over time. Illinois law does apply race judicata to that consideration, though, and it still applies it. If we look at In re Weaver, and if we look at Nye v. Nye, it still applies where the evidence is the same on a successive hearing as it was when the issue was first decided. So, Judge, we feel that it would be in the best interest of the children. Certainly, it's the proper procedure to overturn Judge O'Brien's denial of Allen's motion to dismiss on the issue of race judicata. It's what would have created more stability for the children and also would have not rewarded Ms. Carter for her continued flaunting of the system. Do you mean her single flaunting of the system, or is it flaunting the system in filing a second petition? Judge, I do believe it is flaunting the system to continuously file multiple petitions when you've not gotten your way, in fact, when the trial court previously ruled against you. Her flaunting the system is a wrong pattern of behavior to change the children's circumstances for the worse so that eventually what looks like the best alternative is finally giving in to what she's demanding. If I could make a comparison, in my mind, Judge, it's almost like rewarding a petulant child for throwing a tantrum. The child asks for something, the child is told no, doesn't get what they want, and then they continue to cry or continue on with bad behavior until you finally just give in. In this case, Ms. Carter continued on to make the children's situation worse, and essentially her priority was to be in Indiana. She wasn't going to accept anything less, and she made the children's situation so much worse that she took a job in Indiana, left the children with her parents in Robinson, in order to create this situation. You have said very little about the evidence presented in the hearing, bearing on merits. Judge Reiter's hearing? No, Judge O'Connor's hearing, but he's here. The hearing that was held on the merits over the time from April through July of 2014 was a hearing on two issues. It was on the custody issue as well as the issue of the removal. The evidence presented at that hearing, Judge, in a large part was the same evidence. She presented the evidence of the schools, she presented the evidence of the living arrangements, she presented the evidence of her employment. She did present evidence as far as the children's living situation with her parents in a limited fashion, and Mr. Carter presented others. But to be honest, Judge, I'm not sure that the evidence presented at that hearing has a bearing on whether or not Judge O'Brien should have denied the motion to dismiss. If Judge O'Brien had followed the principle of res judicata and looked at the allegations in Crystal's pleading, as well as considering her confession of Alan's motion to dismiss her amended petition filed in September of 2013, we never would have gotten to the evidence presented at the hearing. And this appeal also only concerns whether or not Judge O'Brien's denial of Alan's motion to dismiss was proper. Well, that's the basis that you, that's the ground upon which you stand in the sense that if you lose, there is no review of the ultimate decision. That's correct, Judge, but I believe this is an issue where we're looking at the pleading, not at the evidence presented. She has to plead sufficient new facts. When she pleads the same information that was presented at hearing and denied at hearing, and then confesses Alan's motion to dismiss on the issue of res judicata, how is it that six weeks later these facts are new? Is it that it's a completely new situation, that it's completely different than what she's already confessed? She admitted that it was res judicata. She admitted that she did not have a new enough situation, new enough circumstances. She admitted that this was already heard by the court and denied. Thank you, counsel. We have a chance on rebuttal. Ms. Smale. Thank you, Judge. Your Honor, I believe that the way the respondent, the appellate in this case, has presented the facts is a little disingenuous. The counsel keeps coming back to, well, she had this confession. She confessed the judgment, and then she filed her Second Amendment petition. Your Honor, if you look at the docket, that's not the way it happened at all. My client filed a petition pro se. She then filed an amended petition. The appellate respondent in this case filed a motion to dismiss that amended petition. On October 25th, my client, through counsel, filed a second amended petition. On November 25th, there was an agreed order that was referenced by counsel whereby my client, quote, unquote, confessed the judgment. In that same agreed order, she was given leave to file her second amended petition, which had been filed on October 25th, 2013. Your condition would be all of this is simply a way to clean up the pleadings and get one final petition on file. Absolutely, Judge. Absolutely. And I understand that the East St. Louis case is old, but I honestly could not find any other case that dealt with this issue of somebody confessed a motion or confessed a pleading, and then it was held against them. And the East St. Louis case says clearly that that's not how it works, and I've never seen it work that way in any other case that I've been in. So our position is that that word confessed in that agreed order does not mean she confesses the motion to dismiss. It's exactly as Your Honor says, just trying to move the pleadings forward, trying to move the case forward. That said, I think that the respondent's argument is a little disingenuous from the outset. He argues that she hasn't had a sufficient change in facts. And let's stop right there, and again we can look at the pleadings, because the pleadings themselves show that he filed a motion to modify custody, alleging that there is a significant change in circumstances, and he files an affidavit regarding the same. So he has admitted that there has been a change in circumstances since 2012 when the original custody order was entered. He's admitted that in his own affidavit. We're here on a 619 motion, Your Honors. 619 motions, as you well know, admit all well-pleaded facts, and affidavits can be used by the courts in determining those issues. That's what we have here. We have the guardian ad litem's report on file. We have the affidavit of Mr. Carter. And again, I think my client even filed an affidavit in support of her response to his motion, all kinds of evidence that there have been a change in circumstances. Moreover, it is not as respondent wants to make it so. It is not that my client filed four different petitions to remove the children. She filed a petition in 2012 when she first moved, and she did it wrong. She did it wrong. She moved out of the state of Illinois, and then she filed a petition, and the judge told her, she said, no, you can't do it that way. You have to come back, and my client complied with that order. She came back to Illinois, and she did the best she could. A year later, she files a second petition for leave to remove. The successive petitions all have to do with that one. It's one petition. It's just an amendment. It's an amendment in the pleadings. So it is not as a respondent would have it that she's gaming the system. That's not what was going on. She found employment, and then the second time around, she did it right. The second time around, before she moved the children, she went to the court and asked permission. May I please move my family to the state of Indiana where I have permanent employment? And at that time, Your Honor, the respondent was on disability and did not have employment of his own. And Your Honor is familiar with the facts, so I won't belabor the point. But the facts had changed. The facts had clearly changed. The guardian ad litem filed two separate reports saying, please, judge, do something for these kids. The situation they find themselves in is untenable. We've got to do something. This is not a good situation. That is a change in circumstances from 2012 as well. In 2012, the placement of all the parties was fine. Everybody was where they were. By the time we get to 2014, that's not the case. That's not the case. Those kids are living with their grandparents while their mom works in Indiana, and their dad lives in, I think it's Mattoon, and nobody was together, and it wasn't working. And that's what the guardian ad litem's report said. So there was clearly a change in circumstances, and I think that our position with respect to race judicata in this case, judge, is valid. There is no case that has the court as well aware, at least that we could find, regarding this issue of race judicata and removal. But I believe that the evidence is different from 2012 to 2014, and I believe that's what Judge O'Brien found as well. I would also like to point out that counsel keeps arguing the sufficiency of the facts that were pled. The sufficiency of the facts pled. That's a 615 argument, Your Honors. 615 was never alleged. It was never filed with the court. In addition, again, he wants this court to find that because my client didn't use the magic language, and hereby incorporated herein, that somehow that guardian ad litem's report doesn't count. That the judge cannot consider that in making a decision on a 619 motion. I do not believe that that's the law in Illinois. I think that this case is quite clear, Your Honor. I don't think that that word confessed means what respondent wants it to mean. I couldn't find any case law that said that it doesn't, and the only case law that I found regarding that issue came down in favor of my client and how that ultimately went. And with respect to removal, obviously there's been a change in circumstances. Obviously it was not good where those children were living.  Thank you. Counsel would like to have this court believe that an agreed order confessing the motion to dismiss on an issue is not dispositive, that it's just an amendment, and that the successive motion is further just an amendment. However, from Black's Law Dictionary, the online resources to confess a confession is a statement admitting or acknowledging the facts necessary. Additionally, while counsel wishes to quote a case from 1888 before the Illinois Courts Act determined that appellate court decisions from prior to 1935, they don't have any weight. They're not dispositive. However, we do have a court decision from the First District in 1981. It's an agreed order. It's a recordation agreement between the parties. It's not a judicial determination of the parties' rights. For this reason, an agreed order generally is not subject to appellate review, but an order is conclusive on the parties and can be amended or set aside by one of the parties. And it can only be done out of showing that the order resulted from fraudulent misrepresentation, coercion, incompetence, gross disparity of position or capacity of the parties, or newly discovered evidence. They haven't pleaded that anything that led to the agreed order was improper or incorrect. The agreed order confessed the motion to dismiss. Therefore, the... I can't call it an amendment because it's an amendment. It's an appropriate thing at the time for the court to say, Your Honor, you cannot give this party leave to file an additional amendment. It's just been confessed. Our position is they confessed it. If I may, as part of the agreed order, was permission to file a second amendment petition for leave to remove. Assuming that they're going to plead new facts. Assuming that they're going to plead some new allegation to support their fourth petition for leave to remove the minor children. That wasn't done. And further, counsel states that we did not file a 615 motion. And that is correct. We did not file a separate 615 motion. However, we did plead in our 619 motion that after removing the allegations which were raised judicata, what is left is insufficient to support a new petition. So I understand that whether it says so in the title, whether it says so in the caption, it is in the pleading, in fact, that her remaining allegations are insufficient to support a petition to remove. You mean the inferred hybrid? That is the effect of it upon reading the entire motion to dismiss, Judge. And in our motion to dismiss, it's paragraph 10, I believe, where we do allege that after removing those allegations barred by raised judicata, there are insufficient pleadings to support a new petition to remove. Any further questions? Mr. Judge, the second amendment, the Jimmy Jung case, or the second amendment? Recent decisions from this court have looked with strong disapproval on mainly 2615 and 2619, and then after the fact saying, well, this is what this means and this is what this means. But I think that's a procedural matter that we call for in that free chance case. We're free. Jimmy Jung. We're familiar with Jimmy Jung's case. That's their model? Freaky fast. Free smell. Freaky fast. Well, freaky fast. And free smell. All right, we'll take this matter under advisement to be a free case.